UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

DANIEL T. HESTER,

       Plaintiff,

v.                                                                    Case No.: 8:11-cv-791-T-24 TGW

FLORIDA CAPITAL GROUP, INC.,

       Defendant.

_____/

## <u>ORDER</u>

This cause comes before the Court on a motion to remand filed by Plaintiff Daniel T. Hester.  (Doc. No. 7).  Defendant Florida Capital Group, Inc. has filed a response in opposition to the motion.  (Doc. No. 8).

## I.     Background

On March 16, 2011, Plaintiff Daniel T. Hester ("Hester") filed a complaint in state court against his former employer, Defendant Florida Capital Group, Inc. ("Florida Capital").  In the complaint, Hester alleges four state law causes of action: (1) breach of his employment agreement, (2) fraud, (3) negligent misrepresentation, and (4) declaratory judgment and injunctive relief.  (Doc. No. 2).  On April 11, 2011, Florida Capital removed this case to federal court, arguing that this Court had federal question jurisdiction pursuant to 28 U.S.C. § 1331.

In his complaint, Hester alleges the following: He was hired by Florida Capital in 2005 as the President and Chief Executive Officer of its Pinellas County operations.  (Doc. No. 2 at 2). In 2008, he was asked to take on the role of President and Chief Operating Officer of the Special Asset Department of Florida Capital.  *Id.*  In September of 2009, he entered into an employment

agreement ("the Agreement") with Florida Capital that acknowledged his position as President and Chief Operating Officer of Florida Capital's Special Asset Division.  *Id.*  The Agreement provides that if he were terminated from his position without cause, he would receive benefits and payment as set forth in Section 8(e) of the Agreement.  (Doc. No. 2, Exh. A at 2).[1]   The Agreement further provides that, in the event of a change of control of Florida Capital, Hester would receive benefits under Section 8(h).  *Id.* at 7.  Hester alleges that Florida Capital assured him that the Agreement had been given all necessary approvals.  (Doc. No. 2 at 3).

Hester further alleges: In December 2010, a change of control of Florida Capital occurred, but Florida Capital did not pay Hester the amount due under Section 8(h) of the Agreement.[2]  *Id.*  In the same month, Florida Capital presented Hester with a proposed Amended and Restated Employment Agreement.  *Id.*  The proposed Amended Agreement differs from the Agreement in that it reduces Hester's pay and changes the terms and amounts of the payments due to Hester in the event of a termination without cause or a change of control.[3]  (*Id.*; Doc. No. 2, Exh. B).  Hester refused to sign the proposed Amended Agreement and was terminated without cause.  (Doc. No. 2 at 4).  After his termination, Florida Capital refused to make the payments required by Section 8 of the Agreement, contending it never had the authority to enter into the Agreement with Hester.  *Id.* at 5.

On April 11, 2011, Florida Capital removed the case to this Court, contending that removal is proper under 28 U.S.C. § 1441(b) because "Hester's purported claims (a) raise

---

[1] Hester provided the Court with a copy of the Agreement as Exhibit A to his complaint.
[2] Section 8(h) of the Agreement provides that the amount due to Hester in the event of a change of control of the company is "a lump sum cash payment in an amount equal to the product of two times the sum of (i) [Hester's] then current Annual Salary and (ii) the amount of [Hester's] cash bonus for the previous year which was earned and recorded."  (Doc. No. 2, Exh. A at 7).
[3] Hester provided the Court with a copy of the proposed Amended Agreement as Exhibit B to his complaint.

substantial questions arising under the laws of the United States . . . and (b) are preempted by the

federal regulatory scheme set forth in Title 12 of the Code of Federal Regulations."  (Doc. No. 1

at 2).  Florida Capital stated that removal was proper because certain federal regulations

contained in 12 C.F.R. §§ 359.0 *et seq.* "limit and/or prohibit, in certain circumstances, the

ability of insured depository institutions, their subsidiaries and affiliated depository institution

holding companies to enter into contracts to pay and to make golden parachute payments to

certain bank executives, including directors and officers such as Hester."  *Id.* (internal quotations

omitted).[4]  Florida Capital argues that since Hester is seeking payment of severance benefits

from an institution subject to the regulations in 12 C.F.R. §§ 359.0 *et seq,* his claims raise

substantial questions of federal law and are preempted by federal law.  On April 28, 2011, Hester

filed the instant motion to remand.  (Doc. No. 7).

## II.     Discussion

Any claim that was originally filed in state court may be removed by a defendant to

federal court if the case could have been filed in federal court originally.  28 U.S.C. § 1441(a).

Where, as here, there is not complete diversity of citizenship, the defendant must show that

federal question jurisdiction is present.  *Id.* at § 1441(b).  Federal courts have federal question

jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United

States."  *Id.* at § 1331.  "A case arises under federal law within the meaning of § 1331 . . . if a

well-pleaded complaint establishes either that federal law creates the cause of action or that the

plaintiff's right to relief necessarily depends on resolution of a substantial question of federal

---

[4]The Federal Deposit Institution Corporation ("FDIC") promulgated these regulations pursuant
to 12 U.S.C. § 1828(k), which states "[t]he [FDIC] may prohibit or limit, by regulation or order,
any golden parachute payment or indemnification payment."  12 U.S.C. § 1828(k)(1).

law." *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 690 (2006) (internal citations and quotations omitted).

Since Hester's four claims are created by state law and not federal law, the only issue for the Court to decide is whether Hester's right to relief necessarily depends on resolution of a substantial question of federal law or is completely preempted by federal law. *See Dunlap v. G&L Holding Grp., Inc*., 381 F.3d 1285, 1290 (11th Cir. 2004) (holding that "even when a plaintiff has pled only state-law causes of action, he may not avoid federal jurisdiction if either (1) his state-law claims raise substantial questions of federal law or (2) federal law completely preempts his state-law claims"). The Court will address each of these questions in turn.

### A.      "Substantial Question" Jurisdiction

The Supreme Court has recognized a longstanding, but infrequently encountered variety of federal "substantial question" jurisdiction in which federal question jurisdiction will lie over state law claims that implicate significant federal issues. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 312 (2005) (*citing Hopkins v. Walker,* 244 U.S. 486, 490-91 (1917)). However, the Supreme Court has stated that this type of federal jurisdiction "demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313 (citations omitted).   In *Grable*, the Supreme Court held that a state-created claim can invoke federal "substantial question" jurisdiction if the claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.

The Supreme Court has also held that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm., Inc. v. Thompson,* 478 U.S. 804, 813 (1986).  Here, Florida Capital argues that Hester's purported claims raise a federal issue under the federal regulatory scheme set forth in 12 C.F.R. §§ 359.0 *et seq.*, because the causes of action are dependent on the interpretation, effect, and application of the regulations.  In an attempt to prove that Hester's claims raise a substantial federal issue, Florida Capital relies on two cases within the Eleventh Circuit.

Florida Capital first relies on *McMahon v. Presidential Airways, Inc.*, 410 F. Supp. 2d 1189 (M.D. Fla. 2006).  In *McMahon*, the defendants allegedly had "contracted with the United States of America to provide air transportation and operational support services to the Department of Defense in Afghanistan." *Id.* at 1192.  The plaintiffs were the widows of United States servicemen who had been killed when the defendants' civilian airplane crashed during a non-combat flight in Afghanistan.  *Id.*  The court held that removal of the state law negligence claims to federal court was proper because there were substantial federal issues apparent in that the case involved a government contract and United States military operations.  *Id.* at 1201.  The *McMahon* court's reasons for finding a substantial federal question cannot be applied to the present case because Hester's complaint does not involve the United States military, government contracts, or even any direct federal involvement in the agreement between the parties.

Florida Capital next relies on *Hill v. Bellsouth Telecomms., Inc.*, 364 F.3d 1308 (11th Cir. 2004).  The plaintiff in *Hill* brought state law claims alleging that the defendant telecommunications carrier misled customers about the filed tariffs it charged to customers.  *Id.* at 1311.  The Eleventh Circuit held that the state law claims were properly removed to federal court, because the claims raised substantial questions of federal law.  *Id.* at 1314.  Specifically,

the court held that the resolution of the state law claims depended on the "filed rate doctrine," a judicially-created federal doctrine that applies to telecommunications carriers who are regulated by the Federal Communications Commission ("FCC"). *Id.* at 1314-15. The filed rate doctrine dictates that the rates a carrier charges its customers, once filed with the FCC, become "the law" and exclusively govern the rights and liabilities of the carrier to the customer. *Id.* at 1315. Under the filed rate doctrine:

> Not only is a carrier forbidden from charging rates other than as set out in its filed tariff, but customers are also charged with notice of the terms and rates set out in that filed tariff and may not bring an action against a carrier that would invalidate, alter or add to the terms of the filed tariff.

*Id.* (citation omitted). The court held that the case was properly removed based on the filed rate doctrine, because the plaintiff was challenging the terms of the defendant's filed tariff and the filed rate doctrine specifically barred that challenge. Additionally, the court considered the principles of non-competition and non-justiciability underlying the filed rate doctrine in its holding that the state court claims were properly removed to federal court.[5]

In the instant case, the claims raised in Hester's complaint do not turn on a federal doctrine comparable to the filed rate doctrine. The regulations cited by Florida Capital as its basis for removal do not prohibit bank employees from seeking assistance in state courts to resolve disputes underlying their employment contracts. Rather, the regulations found in 12 C.F.R. §§ 359.0 *et seq.* simply regulate the ability of an insured depository institution to make agreements to pay golden parachute payments. 12 C.F.R. § 359.4(a). Additionally, the filed rate doctrine's underlying principles of non-competition and non-justiciability are not relevant to the

---

[5]The purpose of the non-competition principle underlying the filed rate doctrine is to ensure that all telecommunications customers are charged the same rate for their service. The purpose of the non-justiciability principle is to preserve the FCC's primary jurisdiction over determinations regarding the reasonableness of rates charged by regulated carriers. *Hill*, 364 F.3d at 1316-18.

regulations found in 12 C.F.R. §§ 359.0 *et seq.*  Accordingly, the *Hill* case does not provide a

basis for federal jurisdiction.

   Furthermore, the Eleventh Circuit's decision in *Dunlap v. G&L Holding Group, Inc.* is

instructive as to whether Hester's claims raise a substantial federal issue.  In *Dunlap*, a founder

and former employee of an internet-based bank brought a state court action against the bank,

alleging breach of his employment agreement and other state law claims.  *Dunlap*, 381 F.3d at

1288.  The defendant bank removed the case to federal court arguing that a substantial question

of federal law existed as to whether the plaintiff's employment agreement satisfied the

requirements of federal banking regulation 12 C.F.R. § 563.39, which governs employment

agreements entered into by federally chartered banks.  *Id.* at 1288-89.  The defendant bank

argued that compliance with this regulation is a federal question substantially necessary to prove

the existence of a valid employment contract.  *Id.* at 1291.  The district court agreed and denied

the plaintiff's motion to remand.  *Id.* at 1289.

   On appeal to the Eleventh Circuit, the plaintiff argued that the district court improperly

exercised subject matter jurisdiction, because his breach of contract claim did not raise

substantial questions of federal law.  *Id.* at 1291.  The Eleventh Circuit agreed, stating "[t]he fact

that a court must apply federal law to a plaintiff's claims or construe federal law to determine

whether the plaintiff is entitled to relief will not confer federal subject matter jurisdiction–the

implicated federal issue must be *substantial*."  *Id.* (emphasis in original).  The *Dunlap* court

found that the regulation at issue did raise a substantial question of federal law, because the

plaintiff's breach of contract claim and other state law claims:

   [Did] not require proof of violation or an interpretation of federal law.  Indeed,
   the only potential issue involving federal law is whether [the plaintiff's]
   employment contract complied with the terms of 12 C.F.R. § 563.39. This issue

> would be raised only as a defense after [the plaintiff] had successfully established
> the existence of a valid contract under state law.

*Id.* at 1292.  The instant case is similar to *Dunlap*.  Hester filed a breach of contract claim and

other state law claims against Florida Capital.  Florida Capital's basis for removal is that 12

C.F.R. §§ 359.0 *et seq.*, which governs a bank's ability to enter into agreements to make golden

parachute payments, raises a substantial federal issue.  This Court disagrees.  The application of

12 C.F.R. §§ 359.0 *et seq.* to the instant state law claims does not raise a substantial issue of

federal law.

### B.    Complete Preemption

Florida Capital finally argues that the federal regulatory scheme set forth in 12 C.F.R. §§

359.0 *et seq.* so occupies the field of whether golden parachute payments can be made to Hester

as to transform Hester's purported state law claims into federal law claims.  Such "[c]omplete

preemption occurs when federal law so occupies a given field that a state-law claim is

transformed into a claim arising under federal law."  *Dunlap*, 381 F.3d at 1290 (*citing Geddes v.*

*Am. Airlines, Inc.*, 321 F.3d 1349, 1353 (11th Cir. 2003)).  The Supreme Court has applied the

complete preemption doctrine to three federal statutes: (1) § 301 of the Labor Management

Relations Act; (2) the Employee Retirement Income Security Act of 1974; and (3) §§ 85 and 86

of the National Bank Act.[6]  *Atwater v. National Football League Players Ass'n*, 626 F.3d 1170,

1176 (11th Cir. 2010).  The "[Supreme] Court has cautioned that complete preemption can be

found only in statutes with 'extraordinary' preemptive force."  *Id.* (citing *Geddes*, 321 F.3d at

1353).  The Supreme Court found that complete preemption applied to the three aforementioned

statutes because all three "provided the exclusive cause of action for the claim asserted and also

---

[6]Sections 85 of the National Bank Act sets forth substantive limits on the rates of interest that
national banks may charge, and Section 86 sets forth the elements of a usury claim against a
national bank.  *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 9 (2003).

set forth procedures and remedies governing that cause of action." *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 8 (2003).

In the instant case, Florida Capital argues that the federal regulations found in 12 C.F.R. § 359.0 *et seq.* "so occupy the issue of whether or not payments of a golden parachute could possibly be made [that they] transform Hester's purported state-law claims into claims arising under federal law." (Doc. No. 8 at 7).   However, Florida Capital cites no precedent that 12 C.F.R. § 359.0 *et seq.* completely preempts Hester's state law claims.  Additionally, the Court finds that 12 C.F.R. § 359.0 *et seq.* does not provide the exclusive cause of action for any of the claims asserted in this case.  Accordingly, the Court finds that 12 C.F.R. § 359.0 *et seq.* does not completely preempt Hester's state law claims.

## III.   Conclusion

The Court finds that it does not have subject matter jurisdiction over Hester's state law claims.  Accordingly, it **ORDERED AND ADJUDGED** that the Clerk is directed to **REMAND** this case to state court and to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 29th day of June, 2011.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

9